Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2017 09:07 AM CDT

LaTanya Thomas, individually and as Special
Administrator of the Estate of Tyler Thomas,
deceased, and Kevin Semans, appellants, v.
Board of Trustees of the Nebraska State
Colleges and Joshua Keadle, appellees.

___ N.W.2d ___

Filed May 19, 2017.    No. S-16-480.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

4. ____. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

5. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

6. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing a motion for summary judgment to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

7. **Tort Claims Act: Proof.** To recover in a negligence action brought under the State Tort Claims Act, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

8. **Negligence.** The existence of a duty generally serves as a legal conclusion that an actor must exercise such degree of care as would be exercised by a reasonable person under the circumstances.

9. **Negligence: Public Policy.** Whether a duty exists is a policy question.

10. **Negligence.** Whether a legal duty exists for actionable negligence is a question of law.

11. ____. In a negligence action, in order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence.

12. ____. Foreseeability is analyzed as a fact-specific inquiry.

13. ____. Small changes in the facts may make a dramatic change in how much risk is foreseeable.

14. ____. The law does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen.

15. **Negligence: Assault.** In order to make a risk of attack foreseeable, the existing circumstances to be considered must have a direct relationship to the harm incurred.

16. **Negligence: Judgments.** Courts should leave determinations of foreseeable risk to the trier of fact unless no reasonable person could differ on the matter.

17. ____: ____. Although questions of foreseeable risk are ordinarily proper for a trier of fact, courts may reserve the right to determine that the defendant did not breach its duty, as a matter of law, if reasonable people could not disagree about the unforeseeability of the risk of the harm incurred.

Appeal from the District Court for Nemaha County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Vincent M. Powers and Elizabeth A. Govaerts, of Vincent M. Powers & Associates, for appellants.

Ronald F. Krause and Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Board of Trustees of the Nebraska State Colleges.

No appearance for appellee Joshua Keadle.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

In the fall of 2010, Tyler Thomas (Thomas) and Joshua Keadle were both students at Peru State College (PSC). On December 3, 2010, Thomas went missing. This appeal arises from Keadle's alleged abduction, rape, and murder of Thomas.

LaTanya Thomas, as the special administrator of Thomas' estate, and LaTanya Thomas and Kevin Semans, individually as Thomas' mother and father (collectively the appellants), filed their fifth amended complaint against the Board of Trustees of the Nebraska State Colleges (Board) and Keadle in the district court for Nemaha County. The appellants filed their action under the State Tort Claims Act and sought damages from the Board for the wrongful death of Thomas, Thomas' pain and suffering, and LaTanya Thomas' and Semans' severe emotional distress. The appellants' causes of action are premised upon the Board's alleged negligence. The appellants also sued Keadle, but their claims against Keadle are not before the court in this appeal.

The appellants and the Board each filed a motion for summary judgment. After a hearing, the district court filed an order in which it granted the Board's motion for summary judgment, denied the appellants' motion, and dismissed the appellants' fifth amended complaint against the Board with prejudice. The appellants subsequently filed a motion for default judgment against Keadle, which was granted as to liability. Following a jury trial on damages, the district court filed an order in which it entered a monetary judgment against Keadle based on the jury's monetary verdict.

The appellants appeal from the district court's order in which it granted summary judgment in favor of the Board. Because we conclude that the risk of Keadle's alleged acts of abducting, raping, and murdering Thomas was not foreseeable

as a matter of law, we affirm the district court's order which granted summary judgment in favor of the Board.

## STATEMENT OF FACTS

In the fall of 2010, Thomas was a freshman student at PSC and lived in a dormitory on campus. Keadle was also a student at PSC, and he lived in the dormitory room next to Thomas'. Keadle was 10 years older than Thomas. Thomas went missing and was last seen on December 3.

In their fifth amended complaint, filed March 19, 2014, the appellants alleged that Thomas was abducted, assaulted, and murdered by Keadle. Although Thomas' body has not been recovered, she has been declared dead by a Nebraska court.

In their fifth amended complaint against the Board and Keadle, the appellants sought damages for the wrongful death of Thomas, for Thomas' pain and suffering prior to her death, and for the severe emotional distress of LaTanya Thomas and Semans as Thomas' parents and next of kin. The appellants' causes of action against the Board are premised upon the Board's negligence. Claims against Keadle are not at issue in this appeal.

On May 27, 2014, the Board filed its answer in which it generally denied the allegations set forth in the appellants' fifth amended complaint and raised various affirmative defenses.

On July 2, 2015, the appellants and the Board each filed a motion for summary judgment. A hearing on the parties' motions was held. Prior to the hearing, the Board filed objections and a motion to strike a number of the appellants' exhibits, including police reports and transcripts and recordings of police interviews with Keadle. The Board's objections to these exhibits were based on "the grounds of being irrelevant, immaterial and constituting hearsay and containing hearsay." At the hearing on the motions for summary judgment, the district court stated that it was "going to take the exhibits offered subject to these objections and . . . the motion."

The evidence received at the hearing is summarized as follows: In August 2010, Keadle applied to be a volunteer strength and conditioning assistant coach for the PSC women's basketball team. When the athletic director learned that Keadle was serving as a voluntary staff member prior to a criminal background check, Keadle's involvement with the women's basketball team was terminated pending completion of a check. The human resources office's criminal background check showed minor traffic offenses.

In September 2010, PSC's director of housing and security received an email from one of his employees informing him that according to a sheriff's deputy, Keadle had been "convicted of robbery of $300 and stealing a purse, in '09 also has other burglary's [sic] but he was not charged for them, also has a forcible fondling (RAPE) on a 18yr old female charge on record, but the charges were droped [sic]." The director of housing and security testified that he verbally informed PSC's athletic director, PSC's vice president for enrollment management and student affairs, and PSC's human resources director about the contents of the email before Thomas' disappearance, but the three administrators deny that they learned about the contents of the email prior to Thomas' disappearance. A second background check on Keadle conducted by the human resources office showed minor traffic offenses and a misdemeanor theft conviction. The director of housing and security recommended that Keadle be removed from the dormitory.

During this time, PSC's athletic director contacted the athletic director at a college Keadle had previously attended for a reference regarding Keadle. The athletic director at that college did not recommend hiring Keadle, and PSC's athletic director decided that Keadle would not be allowed to serve as a voluntary assistant.

In September 2010, Keadle was charged with two separate violations of PSC's code of conduct based on allegations of inappropriate sexual behavior toward two female

students. Neither of the complaints involved Thomas, and neither involved physical contact. With respect to the first charge, Keadle pled responsible and was issued sanctions that consisted of online educational activity and 10 hours of community service. Keadle did not complete these sanctions. With respect to the second charge, Keadle pled not responsible, and after a hearing, he was found not responsible.

PSC's vice president for enrollment management and student affairs testified that although Keadle could have been dismissed from PSC for failure to complete the sanctions, such action would have been out of line with PSC's general past practices. Instead, she testified that generally, when a student failed to complete a sanction, a hold was placed on the student's account so the student could not proceed beyond that semester.

In October 2010, Keadle was charged with a third violation of PSC's code of conduct, because he had damaged the door to his dormitory room. Keadle failed to attend a meeting regarding this incident, and the matter was turned over to the Nemaha County authorities. As of December 3, it was being processed in the court system.

On August 19, 2015, the district court filed its order regarding the parties' motions for summary judgment. The district court did not make specific rulings regarding the Board's objections to the exhibits; instead, the district court stated: "The court has excluded from its consideration all irrelevant facts submitted and any hearsay that was offered for the purpose of proving the truth of said facts." The district court first determined that, based on the admissible evidence, the Board did not owe a duty to Thomas to prevent Keadle's violent actions, because any such actions occurred off PSC's campus. The district court then determined that even if the court had determined there were inferences indicating that the crime or part of the crime had occurred on campus, the appellants failed to present evidence creating a material issue of fact whether the Board could have or should

have foreseen that Keadle would harm Thomas. The district court stated:

> While the [appellants'] counsel made a compassionate presentation for his clients by assembling various faults with Keadle[,] the totality of what is in the record known by the Board of Keadle prior to December 3, 2010, falls far short of what is necessary to present a factual issue of foreseeability to a fact finder. It would be a quantum leap in foreseeability.

Based on the foregoing, the district court granted summary judgment in favor of the Board and denied the appellants' motion for summary judgment. The district court dismissed the appellants' fifth amended complaint against the Board with prejudice.

Subsequently, the district court granted the appellants' motion for default judgment against Keadle and entered default judgment against him on the issue of liability. A jury trial was held regarding the issue of damages against Keadle, and the district court filed an order in which it entered a monetary judgment on the jury's verdict.

The appellants filed a timely appeal from the district court's August 19, 2015, order which granted summary judgment in favor of the Board.

## ASSIGNMENTS OF ERROR

The appellants claim, consolidated and restated, that the district court erred when it (1) granted the Board's motion for summary judgment, (2) determined that the Board did not owe a duty to protect Thomas, and (3) determined that Keadle's alleged abduction, assault, and murder of Thomas were not foreseeable.

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those

facts and that the moving party is entitled to judgment as a matter of law. *Bixenmann v. Dickinson Land Surveyors*, 294 Neb. 407, 882 N.W.2d 910 (2016), *modified on denial of rehearing* 295 Neb. 40, 886 N.W.2d 277. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The appellants generally claim that the district court erred when it granted summary judgment in favor of the Board. The appellants more specifically claim that the district court erred when it determined that the Board did not owe Thomas a duty of care and determined that even if the Board owed Thomas a duty, no reasonable person would find that it breached such duty, because Keadle's conduct in allegedly abducting, raping, and murdering Thomas was not foreseeable. Although our reasoning differs somewhat from that of the district court, for the reasons explained below, we reject the appellants' assignments of error.

[3,4] The principles regarding summary judgment are well established. On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016). Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

[5,6] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Cisneros v. Graham, supra*. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

[7] To recover in a negligence action brought under the State Tort Claims Act, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010). To warrant summary judgment in its favor, a defendant must submit evidence showing the absence of at least one of these elements. Here, the Board contended, inter alia, that as a matter of law, the risk of the alleged abduction, rape, and murder of Thomas was not reasonably foreseeable, and therefore, the Board did not breach its duty. We agree.

[8-10] In the past, we used the risk-utility test to determine the existence of a tort duty. See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). But in *A.W.*, we abandoned the risk-utility test and adopted the duty analysis set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010). We generally held that foreseeable risk is an element of the determination of negligence, not legal duty. *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. After *A.W.*, the existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. Moreover, "[d]uty rules are meant to serve as broadly applicable guidelines for public behavior, i.e., rules of law applicable to a category of cases." *Id*. at 212-13, 784 N.W.2d at 914-15. Whether a duty exists is a policy question. *A.W. v. Lancaster Cty. Sch. Dist. 0001, surpa*. Whether a legal duty exists for actionable negligence is a question of law. See,

*Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016); *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*.

We have previously recognized that schools owe their students a duty of reasonable care. See *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. Therefore, in this case, contrary to the district court's conclusion, the Board owed Thomas a duty of reasonable care.

Having determined that the Board owed a duty of reasonable care to Thomas, we must review the summary judgment evidence as it bears on the remaining elements of negligence. We turn first to the issue of what the evidence shows with respect to whether the Board breached its duty of reasonable care. In this regard, the appellants argue that because Keadle's actions were foreseeable, the Board breached its duty, or, at least, there is a question of fact as to whether the Board breached its duty. Because we conclude that the risk of Keadle's actions was not foreseeable as a matter of law, we reject this argument. Accordingly, there was no breach of duty by the Board.

[11-14] We have stated that in order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence. *Pittman v. Rivera, supra*; *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. Foreseeability is analyzed as a fact-specific inquiry. See, *Hodson v. Taylor*, 290 Neb. 348, 860 N.W.2d 162 (2015); *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. The foreseeability analysis requires us to ask what the defendants knew, when they knew it, and whether a reasonable person would infer from those facts that there was a danger. *Id*. Small changes in the facts may make a dramatic change in how much risk is foreseeable. *Id*. The law does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen. *Hodson v. Taylor, supra*. See, also, *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999).

[15-17] In this case, the appellants allege that Keadle violently attacked Thomas. In order to make a risk of attack foreseeable, the existing circumstances to be considered must have a direct relationship to the harm incurred. See, *Pittman v. Rivera, supra*; *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. We have stated that courts should leave determinations of foreseeable risk to the trier of fact unless no reasonable person could differ on the matter. See *Pittman v. Rivera, supra*. Although questions of foreseeable risk are ordinarily proper for a trier of fact, courts may reserve the right to determine that the defendant did not breach its duty, as a matter of law, if reasonable people could not disagree about the unforeseeability of the risk of the harm incurred. See *Hodson v. Taylor, supra*. Therefore, although foreseeability is a question of fact, there remain cases where foreseeability can be determined as a matter of law, such as by summary judgment. *Id*.

As stated above, in this case, the appellants argue that the evidence shows Keadle's conduct in allegedly abducting, raping, and murdering Thomas was reasonably foreseeable and that because such conduct was reasonably foreseeable, the Board breached its duty of reasonable care owed Thomas. The appellants further argue that at the very least, there is a question of fact as to whether the risk of Keadle's acts was reasonably foreseeable.

In order to determine whether the Board breached its duty of care, we must determine whether the Board, under the facts and circumstances of this case, conducted itself reasonably. We fully recognize that the record indicates that there were warning signs with respect to Keadle's conduct at PSC; however, nothing in the record amounts to a question of fact as to whether such conduct forecast a risk that Keadle might abduct, rape, and murder Thomas.

In support of their argument that the harm incurred by Thomas was reasonably foreseeable, the appellants point to various facts in the record which we have recited above regarding Keadle's past and his actions while a student living

in the dormitory at PSC. Even viewing the evidence in the light most favorable to the appellants as the nonmoving party, as we must on a review of summary judgment, and even assuming without deciding that the challenged evidence was admissible, we conclude as a matter of law that no reasonable fact finder could determine that Keadle's alleged abduction, rape, and murder of Thomas were a foreseeable risk.

The facts indicate that Keadle's behavior was seriously problematic for PSC and other students, but not reasonably indicative that he posed a risk of a violent assault on the person of another student. And although the Board might have anticipated continued problems with Keadle, no reasonable fact finder could find that the harm that occurred was a reasonably foreseeable risk based upon the circumstances present in this case. That is, nothing in the record indicates there was a risk that Keadle's conduct would result in the abduction, rape, and murder of another student. In order to make a risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred. See *Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016). Such direct relationship between the circumstances of the case and the harm allegedly incurred by Thomas is lacking. We agree with the underlying reasoning of the district court when it granted summary judgment in favor of the Board.

## CONCLUSION

Because we determine as a matter of law that Keadle's alleged abduction, rape, and murder of Thomas were not a foreseeable risk, we affirm the district court's order which granted summary judgment in favor of the Board.

AFFIRMED.