Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Paul Gillpatrick and Niccole Wetherell, appellees,
v. Diane Sabatka-Rine et al., appellants.

___ N.W.2d ___

Filed September 29, 2017.    No. S-16-212.

1. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

2. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.

3. **Statutes: States.** State courts are bound by the U.S. Supreme Court's interpretation of federal statutes.

4. **Attorney Fees: Civil Rights.** Under 42 U.S.C. § 1988 (2012), for a plaintiff to be eligible for attorney fees as a prevailing party, the plaintiff must have obtained a judgment on the merits, a consent decree, or some other judicially enforceable settlement, which materially alters the legal relationship of the parties in a way that benefits the plaintiff. In addition to prevailing on the merits of at least some of its claims, a plaintiff must also show that its court victory advanced the purpose behind Congress' allowance of an attorney fee award: ensuring that financial barriers do not prevent plaintiffs from privately enforcing federal civil rights laws.

5. ____: ____. Under 42 U.S.C. § 1988 (2012), a party is not entitled to seek attorney fees until after it becomes eligible for the fees as a prevailing party.

6. **Judgments: Attorney Fees: Civil Rights.** Under 42 U.S.C. § 1988 (2012), a prevailing party's right to attorney fees cannot be limited by a local rule; for state law actions, a party is required to request attorney fees before the court enters an order or judgment.

7. **Judgments: Final Orders: Attorney Fees: Civil Rights.** In an action brought under 42 U.S.C. § 1983 (2012), a party is not required to

separately move for attorney fees until after the trial court enters a final order or judgment on the merits.

8. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

9. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

10. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

11. **Constitutional Law.** The determination of constitutional requirements presents a question of law.

12. **Statutes.** Statutory interpretation presents a question of law.

13. **Immunity: Public Officers and Employees.** The State's sovereign immunity does not bar actions to restrain state officials or to compel them to perform an act they are legally required to do unless the prospective relief would require them to expend public funds.

14. **Actions: Civil Rights: Public Officers and Employees: Liability.** A state official's liability under 42 U.S.C. § 1983 (2012) turns on the capacity in which the state official was sued, not on the capacity in which the defendant acted.

15. ____: ____: ____: ____. State officials sued in their individual capacities can be personally liable under 42 U.S.C. § 1983 (2012) for an action taken under color of state law that deprived the plaintiff of a federal right.

16. **Constitutional Law: Public Officers and Employees: Immunity.** The 11th Amendment bars a suit against state officials when the State is the real, substantial party in interest.

17. ____: ____: ____. When the State or an arm of the State is named as a defendant, 11th Amendment immunity is not limited to suits seeking damages; absent a waiver, it bars a suit regardless of the relief sought.

18. ____: ____: ____. Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), a state's 11th Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights.

19. **Actions: Civil Rights: Public Officers and Employees: Liability.** State officials sued in their official capacities for injunctive relief are persons under 42 U.S.C. § 1983 (2012), because official capacity actions for prospective relief are not treated as actions against the State.

20. **Actions: Public Officers and Employees: Immunity.** A personal capacity suit against a state official does not implicate sovereign immunity, because the plaintiff seeks recovery from the official personally—not from the state's treasury.
21. **Actions: Civil Rights: Public Officers and Employees: Liability.** When a plaintiff in an action brought under 42 U.S.C. § 1983 (2012) seeks injunctive relief to compel state officials to comply with federal law, the claim is available only against a state official sued in his or her official capacity.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Reversed and remanded with instructions.

Douglas J. Peterson, Attorney General, and David A. Lopez for appellants.

Amy Miller, of ACLU of Nebraska Foundation, and Michael D. Gooch for appellees Paul Gillpatrick and Niccole Wetherell.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

## NATURE OF CASE

The appellants, Diane Sabatka-Rine, Denise Skrobecki, and Michael L. Kenney, were state officials in the Nebraska Department of Correctional Services (Department). More specifically, Kenney was the Department's director; Sabatka-Rine was the warden at the Nebraska State Penitentiary (NSP); and Skrobecki was the warden at the Nebraska Correctional Center for Women (NCCW). The appellees, Paul Gillpatrick and Niccole Wetherell, are inmates at different prison facilities who sued the state officials in their individual capacities for interfering with the inmates' request to marry. The Department denied the inmates' request under an internal policy that it does not transport an inmate to another facility for a marriage ceremony. Additionally, the inmates were denied a marriage ceremony via videoconferencing because

the Department interprets Neb. Rev. Stat. § 42-109 (Reissue 2016) to require that the inmates both appear physically before an officiant.

The district court ruled that the Department's policy impermissibly burdened the inmates' right to marry and that its interpretation of § 42-109 was constitutionally flawed. The court sustained the inmates' motion for summary judgment, denied the state officials' motion for summary judgment, and enjoined the state officials and their agents from denying the inmates a marriage ceremony via videoconference or enforcing the Department's policy that rested on its flawed interpretation of § 42-109.

Assuming, without deciding, that the court's decision was correct on the merits, we nonetheless reverse. We conclude that the court erred in granting the inmates injunctive relief. We conclude that in a civil rights action filed under 42 U.S.C. § 1983 (2012), state officials can only be sued for injunctive relief in their official capacities. Accordingly, we remand the cause with instructions for the court to vacate its order.

## JURISDICTION

[1,2] The parties dispute whether the state officials have appealed from a final judgment or order; as a result, we address that issue first. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[1] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[2]

The court's order required the state officials to pay all costs but it did not determine attorney fees, which the inmates had requested in their amended complaint. The officials filed their

---

[1] *State v. McColery, ante* p. 53, 898 N.W.2d 349 (2017).

[2] *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015).

notice of appeal before the court took any action regarding attorney fees.

The inmates moved the Nebraska Court of Appeals to dismiss the appeal because the district court had not entered a final order when the officials filed their appeal. They asserted that their motion for attorney fees and costs was set for a hearing before the defendants filed their appeal. They argued that under our holding in *Kilgore v. Nebraska Dept. of Health & Human Servs.*,[3] the defendants had not appealed from a final order.

In *Kilgore*,[4] we held that the court's failure to address the request for attorney fees in its order left a portion of the judgment unresolved. This failure meant that the order was not final for purposes of appeal.

The plaintiff in *Kilgore* requested attorney fees in her petition. At the close of the evidence, the court announced its ruling from the bench, a portion of which was in the plaintiff's favor, and stated that it would make a determination regarding attorney fees after it calculated her damages. In a subsequent written order, the court reiterated its ruling in favor of the plaintiff and set forth her damages. However, the court's order did not rule on her request for attorney fees. The plaintiff then filed an application for attorney fees, and the defendants filed their appeal.

In addressing the issue of attorney fees, we stated that the plaintiff had properly requested attorney fees in her pleading. We also emphasized that before the court issued its written order, it had announced its ruling from the bench and stated that it would determine attorney fees after calculating damages. We concluded that the court's failure to address the request in its order left a portion of the judgment unresolved, which failure meant that the order was unappealable.

---

[3] *Kilgore v. Nebraska Dept. of Health & Human Servs.*, 277 Neb. 456, 763 N.W.2d 77 (2009).

[4] *Id.*

The state officials in the present matter argued that under *Olson v. Palagi*[5] and *Murray v. Stine*,[6] the district court's order was final, because the inmates failed to move for attorney fees before the court entered its judgment. They did not dispute that the inmates' application for attorney fees was pending before the district court when they filed their notice of appeal. But they argued that under our case law, the court's silence in its order was a denial of a fee award because the inmates had not filed a separate motion for the award. And they argued that holding the order was not final would leave the losing litigants uncertain whether to appeal from a judgment on the merits.

In *Olson*,[7] a father sought a modification of his child support obligation. In the mother's answer, she requested attorney fees and costs, which are authorized under Neb. Rev. Stat. § 42-351 (Reissue 2016). After the court denied a modification, the mother filed a separate application for attorney fees and costs. The father appealed the order denying a modification before the scheduled hearing on the mother's application. While the appeal was pending, the district court dismissed the mother's application for lack of prosecution. But after the Court of Appeals affirmed the judgment on the merits, the district court conducted a hearing on the mother's application, and the father appealed again from the court's fee award.

We vacated the district court's order, concluding that the court lacked jurisdiction to hear the mother's application for a fee award. We reasoned that the district court, by its silence, had implicitly denied the mother's request "under these circumstances."[8] We noted that the order denying the father's complaint to modify did not address the mother's request for attorney fees in her answer. And in a docket entry, the court

---

[5] *Olson v. Palagi*, 266 Neb. 377, 665 N.W.2d 582 (2003).

[6] *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015) (per curiam).

[7] *Olson, supra* note 5.

[8] *Id.* at 380, 665 N.W.2d at 585.

had stated that there was "'[n]othing under advisement.'"[9] We stated that attorney fees are generally treated as costs and that parties seeking attorney fees must request them before the court issues a judgment. We concluded that the mother's application for attorney fees had failed to revive the issue because she did not move for a new trial or an amended order and because she did not raise the court's failure to award attorney fees in a cross-appeal. We reasoned that the parties and the Court of Appeals had treated the trial court's order as final, which could have been true only if it had denied attorney fees. We held that after the district court's judgment was final, it lacked jurisdiction to award attorney fees because the mother no longer had any means of challenging its earlier, implicit denial of fees.

In *Murray*,[10] a 2015 case, the defendants had sought a fee award under Neb. Rev. Stat. § 25-824 (Reissue 2016), some defendants in their answer and some in a motion filed before the court entered its summary judgment. The court's summary judgment orders were silent on the issue of attorney fees. We stated that under *Olson*, a judgment's silence "'on the issue of attorney fees *must* be construed as a denial of . . . the request.'"[11] In contrast, we stated if a litigant separately moves for attorney fees before the court enters a judgment on the merits, the order or judgment is not appealable until the court disposes of the request for attorney fees. There, we reasoned that even if the court's summary judgments had "implicitly denied the requests for attorney fees included in the respective answers, it clearly did not dispose of the separate motions for attorney fees."[12] We noted that a hearing on the motions had been scheduled before the court entered its summary judgments and concluded that the court's silence could not be considered

---

[9] *Id.*

[10] *Murray, supra* note 6.

[11] *Id*. at 129, 864 N.W.2d 390 (emphasis supplied).

[12] *Id.* at 131, 864 N.W.2d at 391.

a denial of a fee award under those circumstances. We held that the summary judgments were not final, appealable orders because "the absence of a ruling on attorney fees left a portion of the judgment unresolved."[13]

In the instant case, the Court of Appeals denied summary dismissal, noting that neither party had supplemented the record or included a copy of the inmates' application for attorney fees with the appellate filings. But it concluded that the order was final under *Murray* and *Olson*, because the inmates did not separately move for attorney fees before the court issued its summary judgment. We subsequently moved this case to our docket pursuant to Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

Though our holding in *Kilgore* may seem contrary to our holdings in *Olson* and *Murray*, the facts of the cases are distinguishable. In *Kilgore*, the court had announced from the bench that it would determine attorney fees after it calculated the plaintiff's damages, while in *Olson* and *Murray*, the courts were silent as to attorney fees altogether. However, we conclude that the instant case is distinguishable from all three cases because it is a § 1983 action and, as a result, our prior jurisprudence is inapplicable.

Because this is primarily a § 1983 action and the court implicitly granted relief on that claim, the inmates' right to attorney fees is governed by 42 U.S.C. § 1988(b) (2012): "In any action or proceeding to enforce a provision of [specified civil rights statutes, including § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

[3,4] State courts are bound by the U.S. Supreme Court's interpretation of federal statutes, including § 1988.[14] Under § 1988, for a plaintiff to be eligible for attorney fees as a

---

[13] *Id.*

[14] See *James v. City of Boise, Idaho*, ___ U.S. ___, 136 S. Ct. 685, 193 L. Ed. 2d 694 (2016).

prevailing party, the plaintiff must have obtained a judgment on the merits, a consent decree, or some other judicially enforceable settlement, which materially alters the legal relationship of the parties in a way that benefits the plaintiff.[15] In addition to prevailing on the merits of at least some of its claims,[16] a plaintiff must also show that its court victory advanced the purpose behind Congress' allowance of an attorney fee award: ensuring that financial barriers do not prevent plaintiffs from privately enforcing federal civil rights laws.[17]

"[T]he fees authorized by § 1988 [are] 'an integral part of the remedies necessary to obtain' compliance with § 1983."[18] But the U.S. Supreme Court has held that the time limits for a motion to amend or alter a judgment have no application to a postjudgment request for attorney fees under § 1988, because the motion raises a collateral matter and does not seek a change in the judgment on the merits:

[A] request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action . . . .

. . . Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one

---

[15] See, *Lefemine v. Wideman*, 568 U.S. 1, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012); *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

[16] See *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011).

[17] See, e.g., *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010); *Dennis v. Higgins*, 498 U.S. 439, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991) (Kennedy, J., dissenting; Rehnquist, C.J., joins); *Missouri v. Jenkins*, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989); *Hensley, supra* note 15; *Shelby County, Ala. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015), *cert. denied* ___ U.S. ___, 136 S. Ct. 981, 194 L. Ed. 2d 4 (2016).

[18] *Maine v. Thiboutot*, 448 U.S. 1, 11, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

party has "prevailed." . . . [T]he attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial.[19]

In *White v. New Hampshire Dept. of Empl. Sec.*,[20] the Court explained that in the course of civil rights litigation, especially in actions seeking injunctive relief, a court could issue many orders that would cause a plaintiff's counsel to forfeit the right to fees if they did not file a request after every order that could be construed as a "final judgment." The Court further noted that applying a 10-day time limit could deprive counsel of the time needed to negotiate a settlement. It reasoned that these possibilities would only encourage additional litigation. But the Court also stated that federal district courts could adopt local timeliness standards for filing claims for attorney fees and could avoid piecemeal appeals by promptly hearing requests for attorney fees.

[5-7] Under the Court's interpretation of § 1988, a party is not entitled to seek attorney fees until after it becomes eligible for the fees as a prevailing party. And because the Court held that a prevailing party's right to attorney fees is not limited by a time limit for a postjudgment motion, it also cannot be limited by a local rule; for state law actions, a party is required to request attorney fees before the court enters an order or judgment.[21] We are bound by that interpretation. We therefore conclude that in a § 1983 action, a party is not required to separately move for attorney fees until after the trial court

---

[19] *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 451-52, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982). See, also, *Bumpers v. Community Bank of N. Virginia*, 364 N.C. 195, 695 S.E.2d 442 (2010); 1 Robert L. Rossi, Attorneys' Fees § 6:18 (3d ed. 2015); 15B Charles Alan Wright et al., Federal Practice and Procedure § 3915.6 (1992 & Supp. 2017); 5 Am. Jur. 2d *Appellate Review* § 391 (2007).

[20] *White, supra* note 19, 455 U.S. at 454.

[21] See *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

enters a final order or judgment on the merits. Because our rule for state law actions does not apply, the court's decision on the merits of the pleadings is an appealable order. Having determined that we have jurisdiction, we turn to the facts of this appeal.

## BACKGROUND

Gillpatrick is incarcerated at the NSP in Lincoln, Nebraska, and is serving lengthy sentences for his convictions of second degree murder and use of a weapon to commit a felony.[22] Wetherell is incarcerated at the NCCW in York, Nebraska, and is serving a life sentence for a first degree murder conviction.[23]

### Grievance Procedures

In May 2012, Weatherell submitted a "Marriage Intention Form" and interview request to the religious coordinator at the NCCW. She stated her intention to marry Gillpatrick that July. Gillpatrick submitted a corresponding request at the NSP.

In July 2012, Wetherell filed a grievance, stating that she and Gillpatrick had followed the marriage procedures under the Department's administrative regulation No. 208.01 (AR 208.01), but that the religious coordinator would not record a telephonic wedding as a valid marriage because both parties had to be present. She acknowledged that the Department would not transport her or Gillpatrick to another facility but implicitly wanted the Department to provide a telephonic ceremony. She received an unsigned response denying her request because it was prohibited by the combination of § 42-109 and prison regulations:

> The [Department] will not transport inmates from one institution to another for a marriage ceremony. With the approval of both Wardens, inmates housed at Community

---

[22] See *State v. Gillpatrick*, No. A-10-793, 2011 WL 2577279 (Neb. App. June 28, 2011) (selected for posting to court website).

[23] See *State v. Wetherell*, 259 Neb. 341, 609 N.W.2d 672 (2000).

Corrections Centers may be allowed to enter NCCW in order to be married. You are not permitted to have telephone contact with inmates at other facilities. Per [§] 42-109, the parties shall solemnly declare in the presence of the magistrate or minister and the attending witnesses, that they take each other as husband and wife; and in any case there shall be at least two witnesses, besides the minister or magistrate present at the ceremony.

In August 2012, Wetherell filed another grievance, stating that she and Gillpatrick had requested a telephonic wedding because neither of them would be "classified to community corrections anytime in the future." She asked if they could pay for transportation to the courthouse to comply with § 42-109. The response was the same. In September, she filed an administrative appeal. The Department's director again responded that the Department does not provide transportation for a marriage.

In October 2012, Gillpatrick filed a similar grievance at the NSP, arguing that no laws prohibited their marriage and that he and Wetherell would be "locked up for a very long time" and wished to comfort each other. An officer responded that Nebraska law does not authorize telephonic marriages, the Department's regulations did not authorize an inmate-to-inmate marriage via telephone, and the Department will not transport inmates for a marriage ceremony. In March 2013, Gillpatrick's administrative appeal was denied as untimely. In July, Gillpatrick filed a new grievance. The new grievance, an administrative appeal, and subsequent interview requests were all denied.

## Court Procedures

In February 2014, the inmates filed their first complaint, in which they named the Department, Sabatka-Rine, Skrobecki, and Kenney as defendants. Each state official was sued in his or her official capacity. The inmates alleged that they had no means of exercising their right to marry unless the Department

accommodated them in some manner. They alleged claims under 42 U.S.C. § 1983, the federal Due Process Clause, and the Nebraska Constitution. They alleged that the defendants' policies, customs, and practices had prevented inmates in separate facilities from marrying and that they had a fundamental right to marry, which could not be denied because they were incarcerated. They sought a declaration that the defendants' policies and practices violated the Constitution, as well as a preliminary and permanent injunction requiring the defendants and their agents to "make such accommodations as necessary, consistent with legitimate penological concerns, to facilitate the completion of [their] marriage application."

Despite not having been sued in their individual capacities, the state officials moved, in their individual capacities, to dismiss the inmates' complaint under Neb. Ct. R. Pldg. § 6-1112(b)(1) for lack of subject matter jurisdiction and under § 6-1112(b)(6) for failure to state a claim upon which relief can be granted. At the hearing on the motion to dismiss, the inmates agreed that (1) the Department was entitled to assert sovereign immunity; (2) the court could not order the Department to transport inmates to facilitate a marriage; (3) they had sued the state officials in their official capacities, but served them individually; and (4) they could not ask the court to order the Department "or its employees acting in their official capacity to do something . . . because the [S]tate has not waived its sovereign immunity from the suit in its own courts." But the inmates argued that the court could still determine whether the Department's policies were constitutional and whether they were entitled to prospective relief. They asked for leave to amend. They argued that although they were asking for a declaratory judgment, they were not asking for an advisory opinion, because there were reasonable alternatives to transporting inmates to facilitate a marriage ceremony. The court concluded that the motion to dismiss should be sustained and gave the inmates leave to file an amended complaint.

In the inmates' amended complaint, they omitted the Department as a defendant and sued the same state officials in their individual capacities only. They asserted separate claims against each official and alleged claims under § 1983, Neb. Rev. Stat. § 84-911 (Reissue 2014) of the Administrative Procedure Act (APA), the federal Due Process Clause, and the Nebraska Constitution. For each claim, they alleged that the Department's policies had denied them their fundamental right to marry while they were incarcerated and that the state officials would continue to deny them this right unless enjoined. They alleged that when Kenney denied their administrative appeals, he did so intentionally and without exercising his professional judgment as to whether their request would pose a threat to security, order, or public safety. They made the same allegations against Sabatka-Rine and Skrobecki. The inmates sought a declaration that (1) the Department's policies, customs, and practices, as applied to them, violated the Constitution and (2) the state officials' denial of their requests to marry and their grievances violated their constitutional right to marry. They sought a preliminary and permanent injunction preventing the state officials and their agents from relying on past denials of their marriage requests for any purpose, as well as asking the court for costs and attorney fees.

The state officials filed an answer denying the inmates' allegations, affirmatively alleging that their claims were barred by sovereign immunity and qualified immunity, and that they had failed to state a claim for which relief could be granted. In February 2015, the state officials moved for summary judgment. In May, they moved the court to dismiss the action for lack of subject matter jurisdiction. In July, the inmates objected to the motion to dismiss. In October, they filed a cross-motion for summary judgment.

At a hearing in November 2015, the assistant attorney general representing the state officials stated that he had recently learned the Department had repealed the disputed

language from AR 208.01 but that it would be promulgating similar language in the future. He believed the case could go forward on the validity of the Department's internal policy because the Department would still enforce the policy of the deleted language in AR 208.01, which he argued was not subject to the APA. Because the Department would still enforce its policy, he argued that the court's judgment would not be advisory.

The inmates agreed that they were not asking for an advisory opinion. They had argued the Department could deny a marriage request under AR 208.01 only if a warden finds it would pose a threat to security, order, or public safety. They argued that the Department's position had not changed—i.e., it would not facilitate their marriage—and that their constitutional claim was therefore still alive. They stated that they were not challenging the constitutionality of § 42-109. Instead, they argued that the court could reasonably interpret it to authorize a telephonic ceremony. The state officials conceded that the Department's policy rested on its interpretation of § 42-109. They argued that they should not be required to expend resources to facilitate an unlawful marriage.

## Court's Order

The court rejected the state officials' argument that it lacked authority to interpret § 42-109 because the inmates had asked for declaratory relief under the APA instead of the Uniform Declaratory Judgments Act. The court reasoned that the inmates were asking for relief from the officials' interpretation of the statute to promulgate a rule that impinged on the inmates' right to marry. It described the officials' justification for the rule as not wanting to waste time and resources on an unlawful marriage under a statute that the Department could not ignore. It concluded that the inmates' request for relief from the officials' interpretation of § 42-109 fell within the parameters of § 84-911 of the APA and that the officials had not cited any cogent authority to the contrary. Citing

federal appellate decisions,[24] the court stated, "'Courts are the final authorities on such issues of statutory construction [and] remain free to set aside an agency's construction of a statute if it does not have a reasonable basis in law or if it frustrates congressional policy.'"

In the district court's order, it concluded that the parties' dispute was substantively governed by the U.S. Supreme Court's decision in *Turner v. Safley*.[25] It concluded that the state officials had interpreted the requirement of "presence" in § 42-109 to mean that persons wishing to marry had to declare their intent in the "physical presence" of an officiant. But it concluded that § 42-109 neither directly authorized nor prohibited an officiant from conducting a marriage ceremony by videoconference and that nothing in the statute supported the officials' interpretation. The court noted that (1) the officials had not argued the inmates' marriage posed a threat to security, order, or public safety; (2) they had not stated a penological justification for the challenged policy; (3) they had not argued that arranging the marriage would adversely impact staff or resources; and (4) they had not argued that the technology was unavailable to comply with the inmates' request to marry. It determined that the officials had not satisfied the *Turner* test and that every factor weighed in the inmates' favor.

The court rejected the officials' argument that *Turner* only requires prison officials to have a reasonable justification for preventing inmates from marrying and that § 42-109 provides that justification because it makes telephonic marriages invalid. It stated that like the challenged regulation in *Turner*, the officials' argument showed the Department's marriage restriction was an exaggerated response, which was not related to a valid security or rehabilitative concern. It concluded

---

[24] See, *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979); *Metro. Med. Ctr. & Extended Care Fac. v. Harris*, 693 F.2d 775 (8th Cir. 1982).

[25] *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

that the officials had relied solely on their interpretation of § 42-109 to establish a policy that "flies in the face of the [inmates'] constitutional rights."

The court concluded that the Department's policy had impermissibly burdened the inmates' right to marry and that their interpretation of § 42-109, in the context of this case, was constitutionally flawed. It sustained the inmates' motion for summary judgment, denied the officials' motion for summary judgment, and enjoined the officials and their agents from denying the inmates' a marriage via videoconference or enforcing the Department's policy that rested on an interpretation of § 42-109 to require the inmates' physical presence before an officiant.

## ASSIGNMENTS OF ERROR

The state officials assign that the court erred as follows:

(1) The court erred to the extent that it ordered any relief under § 84-911 of the APA, because the inmates failed to challenge the validity of a regulation and failed to name the Department as a defendant;

(2) the court erred to the extent that it determined the inmates' rights under any statute, because the inmates failed to file a claim under Neb. Rev. Stat. § 25-21,150 (Reissue 2016) of the Uniform Declaratory Judgments Act;

(3) the court erred to the extent it granted the inmates injunctive relief under the principles of *Ex parte Young*,[26] because their claims were against the officials in their individual capacities;

(4) the court erred to the extent it concluded that the 14th Amendment commands states to affirmatively facilitate videoconference wedding ceremonies between inmates;

(5) the court violated the State's sovereign immunity to the extent its order requires the State to take an affirmative action; and

---

[26] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

(6) the court erred in denying the officials' motion for summary judgment, and in sustaining the inmates' motion for summary judgment and awarding them costs.

## STANDARD OF REVIEW

[8,9] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[27] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and give that party the benefit of all reasonable inferences deducible from the evidence.[28]

[10-12] We independently review questions of law decided by a lower court.[29] The determination of constitutional requirements presents a question of law.[30] Statutory interpretation presents a question of law.[31]

## ANALYSIS

[13] We need not address the state officials' arguments about the inmates' pleading deficiencies for their state law claims here, because those deficiencies are irrelevant to the inmates' § 1983 claim. The district court engaged in statutory interpretation only to reject the officials' argument that the Department's regulation did not violate federal law. As such, its decision primarily rested on the inmates' § 1983 claim. And we reject the officials' argument that sovereign immunity barred any claim for an order to compel them to perform any

---

[27] *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017).

[28] *Id.*

[29] *In re Estate of Fuchs, ante* p. 667, ___ N.W.2d ___ (2017); *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

[30] *Harris, supra* note 29.

[31] *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

affirmative act. The State's sovereign immunity does not bar actions to restrain state officials or to compel them to perform an act they are legally required to do unless the prospective relief would require them to expend public funds.[32]

However, we find merit in the officials' third assignment of error that the inmates could not obtain injunctive relief against them, because in their amended complaint, they sued the officials only in their individual capacities.

Section 1983, in relevant part, provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In *Will v. Michigan Dept. of State Police*,[33] the U.S. Supreme Court held that state officials "acting in their official capacities" are not "'persons'" subject to liability for damages under § 1983. The Court interpreted § 1983 to mean that a suit against a state official in his or her official capacity is a suit against the official's office. "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."[34]

[14,15] In *Hafer v. Melo*,[35] however, the Supreme Court clarified that a state official's liability under § 1983 turns on the capacity in which the official was sued, not on the capacity in which the defendant acted. It held that state officials

---

[32] See *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012).

[33] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[34] *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).

[35] *Id.*

sued in their individual capacities can be personally liable under § 1983 for an action taken under color of state law that deprived the plaintiff of a federal right.[36] A victory in a personal capacity action is a victory against the individual defendant, rather than against the entity that employs him.[37]

[16-18] These holdings rest on the Supreme Court's 11th Amendment jurisprudence. The 11th Amendment bars a suit against state officials when "'the state is the real, substantial party in interest.'"[38] And when the State or an arm of the State is named as a defendant, 11th Amendment immunity is not limited to suits seeking damages; absent a waiver, it bars a suit regardless of the relief sought.[39] However, under the doctrine of *Ex parte Young*,[40] a state's 11th Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights.[41]

In *Ex parte Young*, the U.S. Supreme Court held that the 11th Amendment did not bar a suit to enjoin a state attorney general from enforcing a state statute that allegedly violated the 14th Amendment. The Court surveyed its case law and concluded that it showed state officials who are sufficiently connected to the enforcement of an unconstitutional enactment can be enjoined from enforcing it.[42] But the Court also explained that such claims do not affect the state, because if the statute that the official seeks to enforce is unconstitutional

---

[36] *Hafer, supra* note 34.

[37] *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

[38] *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

[39] *Pennhurst State School & Hosp., supra* note 38.

[40] *Ex parte Young, supra* note 26.

[41] *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

[42] See *Ex parte Young, supra* note 26.

and therefore void, then the official is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."[43]

[19] Courts holding that injunctive relief is available in individual capacity suits seem to have read this statement to mean that a suit for prospective relief is against an official individually.[44] But the Supreme Court later explained that the "fiction of [*Ex parte*] *Young*" has been "accepted as necessary" to harmonize states' 11th Amendment immunity with the need to vindicate federal rights and hold state officials responsible to the supremacy of federal law.[45] And the Court has consistently explained that state officials sued *in their official capacities* for injunctive relief are persons under § 1983, because official capacity actions for prospective relief are not treated as actions against the State.[46]

[20] The doctrine in *Ex parte Young* is an *exception* to a state's immunity.[47]

> [T]he exception . . . is based in part on the premise that sovereign immunity bars relief against States and their officers in both state and federal courts, and that certain suits for declaratory or injunctive relief against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land.[48]

In contrast, a personal capacity suit against a state official does not implicate sovereign immunity, because the plaintiff

---

[43] *Id.*, 209 U.S. at 160.

[44] See, *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180 (3d Cir. 2009); *MCI Telecommunication Corp. v. Bell Atlantic PA*, 271 F.3d 491 (3d Cir. 2001); *Clajon Production Corp. v. Petera*, 70 F.3d 1566 (10th Cir. 1995).

[45] See *Pennhurst State School & Hosp., supra* note 38, 465 U.S. at 105.

[46] See, *Hafer, supra* note 34; *Will, supra* note 33; *Graham, supra* note 37.

[47] See, *Verizon Md. Inc., supra* note 41; *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999).

[48] *Alden, supra* note 47, 527 U.S. at 747.

seeks recovery from the official personally—not from the state's treasury.[49]

Because "individual (or personal) capacity suits" seek recovery from an official personally, instead of seeking "to conform the State's conduct to federal law," the Seventh Circuit has held that the exception in *Ex parte Young* applies only when a state official is sued in his or her official capacity.[50] The court reasoned that because individual capacity suits do not implicate 11th Amendment immunity, creating an exception to that immunity for prospective relief would have been unnecessary if a plaintiff could sue state officials in their individual capacities. It therefore concluded that the twin goals served by the exception in *Ex parte Young* to 11th Amendment immunity— vindicating federal rights and holding state officials responsible to federal law—cannot be achieved by a lawsuit against a state official in his or her individual capacity.[51] Among courts that have reached this issue, the trend and weight of authority is that injunctive relief is not available against officials sued in their individual capacities.[52]

In the instant case, the inmates are not seeking money damages for past injuries, but instead are seeking injunctive relief.

---

[49] *Alden, supra* note 47.

[50] *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002).

[51] *Id.*

[52] See, *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011); *Greenawalt v. Indiana Dept. of Corrections*, 397 F.3d 587 (7th Cir. 2005); *Ameritech Corp., supra* note 50; *Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990); *Feit v. Ward*, 886 F.2d 848 (7th Cir. 1989); *Akins v. Bd. of Gov. of State Colleges & Univ.*, 840 F.2d 1371 (7th Cir. 1988), *cert. granted and judgment vacated on other grounds* 488 U.S. 920, 109 S. Ct. 299, 102 L. Ed. 2d 319; *Pascarella v. Swift Transp. Co., Inc.*, 643 F. Supp. 2d 639 (D.N.J. 2009); *Hatfill v. Gonzales*, 519 F. Supp. 2d 13 (D.D.C. 2007); *Meza v. Livingston*, No. 09-50367, 2010 WL 6511727 (5th Cir. Oct. 19, 2010) (unpublished opinion); *Preble v. Milyard*, No. 07-cv-01361-REB-KMT, 2008 WL 4371906 (D. Colo. Sept. 22, 2008) (unpublished decision).

Because the relief is prospective in nature, the State's sovereign immunity would not bar the claim against a state official sued in his or her official capacity.[53]

But we agree with the courts that have held injunctive relief cannot be obtained in a § 1983 action against state officials who were sued in their individual capacities. An injunction against the three named state officials, as individuals, would not vindicate federal rights or hold state officials responsible to federal law, because they have no power as individuals to carry out these responsibilities.

[21] As a result, we hold that when a plaintiff in a § 1983 action seeks injunctive relief to compel state officials to comply with federal law, the claim is available only against a state official sued in his or her official capacity. Because the inmates sued the state officials in their individual capacities only, the court erred in granting them injunctive relief on their § 1983 claim.

## CONCLUSION

We conclude that because federal law controls when a party must move for attorney fees in a § 1983 action, the court's ruling on the merits of the pleadings is an appealable judgment. But we conclude that the court erred in granting the inmates injunctive relief, because in the inmates' amended complaint, they sued the state officials only in their individual capacities. Accordingly, we reverse the court's judgment and remand the cause with instructions for the court to vacate its order.

Reversed and remanded with instructions.

---

[53] See, *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014); *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).