Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/25/2018 09:08 AM CDT

- 136 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

CHRISTOPHER BELL, AS SPECIAL ADMINISTRATOR FOR THE ESTATE
OF CASH BELL, ET AL., APPELLANTS AND CROSS-APPELLEES,
v. GROW WITH ME CHILDCARE & PRESCHOOL LLC,
A DOMESTIC LIMITED LIABILITY COMPANY ORGANIZED
UNDER THE LAWS OF THE STATE OF NEBRASKA,
ET AL., APPELLEES AND CROSS-APPELLANTS.

___ N.W.2d ___

Filed March 2, 2018.    No. S-16-678.

1. **Directed Verdict: Evidence.** A directed verdict is proper at the close of
   all the evidence only when reasonable minds cannot differ and can draw
   but one conclusion from the evidence, that is, when an issue should be
   decided as a matter of law.
2. **Negligence.** The question whether a legal duty exists for actionable
   negligence is a question of law dependent on the facts in a particu-
   lar situation.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an
   appellate court has an obligation to resolve the questions independently
   of the conclusion reached by the trial court.
4. **Negligence: Damages: Proximate Cause.** In order to prevail in a neg-
   ligence action, a plaintiff must establish the defendant's duty to protect
   the plaintiff from injury, a failure to discharge that duty, and damages
   proximately caused by the failure to discharge that duty.
5. **Negligence.** The threshold issue in any negligence action is whether the
   defendant owes a legal duty to the plaintiff.
6. **Negligence: Liability.** Under the duty framework of the Restatement
   (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010),
   the ordinary duty of reasonable care is expressly conditioned on the
   actor's having engaged in conduct that creates a risk of physical harm to
   another. In the absence of such conduct, an actor ordinarily has no duty
   of care to another.
7. ____: ____. The Restatement (Third) of Torts: Liability for Physical and
   Emotional Harm § 7 (2010) states the general principle that an actor

- 137 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

has a duty of reasonable care when the actor's conduct creates a risk of physical harm to others. The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 37 (2012) states a complementary principle: There is no duty of care when another is at risk for reasons other than the conduct of the actor, even though the actor may be in a position to help.

8. **Torts: Negligence.** The common law of torts has long recognized a fundamental distinction between affirmatively creating a risk of harm and merely failing to prevent it.

9. **Negligence.** There is no distinction more deeply rooted in the common law and more fundamental than that between misfeasance and nonfeasance, between active misconduct working positive injury to others and passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant.

10. ____. One way to determine whether an actor's conduct created a risk of harm is to explore, hypothetically, whether the same risk of harm would have existed even if the actor had not engaged in the conduct.

11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

12. **Negligence.** The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010) does not recognize a universal duty to exercise reasonable care to all others in all circumstances. Rather, it imposes a general duty of reasonable care only on an actor whose conduct has created a risk of physical harm to another, and it recognizes that absent such conduct, an actor ordinarily has no duty of care to another.

13. ____. Under the risk architecture of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), the first step is to determine whether the actor's affirmative conduct created a risk of physical harm such that the general duty to exercise reasonable care under § 7 is applicable. If no such affirmative conduct exists, then the next step is to determine whether any special relationship exists that would impose a recognized affirmative duty on the actor with regard to the risks arising within the scope of that relationship.

14. ____. The failure to rescue or protect another from harm is not conduct creating a risk of harm under the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), and does not give rise to a duty of care under that section.

15. ____. Under the duty analysis of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010), the conduct creating the risk must be some affirmative act, even though the claimed breach

- 138 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

can be a failure to act. When the only role of the actor is failing to inter-vene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk.

16. ____. Generally speaking, the law does not recognize a duty of care when others are at risk of physical harm for reasons other than the con-duct of the actor, even if the actor may be in a position to help.

17. ____. Ordinarily, the failure to act will not be the sort of affirmative conduct that gives rise to a duty under the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010).

18. ____. Even when an actor's conduct does not create a risk of physical harm, the actor may still owe an affirmative duty of care based on a special relationship.

19. ____. Under the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 41 (2012), an actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

Mark C. Laughlin, David C. Mullin, and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., for appellants.

Mark J. Daly, Andrew T. Schlosser, and MaryBeth Frankman, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees La Petite Academy, Inc., and Lisa Hampson.

Richard J. Gilloon, Bonnie M. Boryca, and MaKenna J. Stoakes, of Erickson & Sederstrom, P.C., for appellees Grow With Me Childcare & Preschool LLC and Jennifer Schmaderer.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

This is a tort action brought to recover damages result-ing from the tragic death of an infant who was abused by his nanny. The parents and special administrator for the infant's estate sued the nanny for battery, and also sued two childcare centers where the nanny had worked previously, alleging the

- 139 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

childcare centers were negligent because they knew or should have known the nanny had been abusive to other children while in their employ but failed to report it to authorities. At the close of the evidence, the district court directed a verdict in favor of the childcare centers and dismissed them from the case. The claim against the nanny was submitted to the jury, which returned a verdict in excess of $5 million. The parents and special administrator appeal the dismissal of the childcare centers, and the childcare centers cross-appeal.

This case requires us to determine, as a threshold matter, whether the childcare centers owed a legal duty to protect the infant from the criminal acts of a former employee. Because we find no such duty on the facts of this case, we affirm the district court's dismissal of the claims against the childcare centers.

## I. FACTS

Christopher Bell and Ashley Bell are the parents of Cash Bell, born in October 2012. Christopher and Ashley used Care.com, an online marketplace for finding caregivers, to hire a nanny to provide in-home care for Cash. They ultimately hired Sarah Cullen. They selected Cullen over approximately 30 other matches proposed by Care.com, in part because Cullen had more experience working in childcare centers. Before selecting Cullen, Christopher and Ashley conducted a standard background check using Care.com. The background check revealed no concerns.

Cullen began working for Christopher and Ashley in January 2013. On February 28, Cullen inflicted fatal injuries on Cash, and he died from his injuries several days later. Cullen subsequently was convicted of intentional child abuse resulting in death and was sentenced to imprisonment for a term of 70 years to life.[1] This court affirmed her conviction and sentence on direct appeal.[2]

---

[1] *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

[2] *Id*.

- 140 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

### 1. Bells Sue for
### Wrongful Death

In May 2014, Christopher, acting as the special administrator for the estate of Cash, filed this wrongful death action in the Douglas County District Court on behalf of the next of kin. Joined with the wrongful death action was a survival action seeking to recover Cash's damages, as well as Christopher and Ashley's claim for predeath medical expenses. We refer collectively to these parties as "the Bells."

#### (a) Claims Against Cullen

The Bells sued Cullen, alleging a claim of battery resulting in death. Cullen was served but did not answer, and the district court entered default judgment against Cullen on the issue of liability for Cash's death. The question of damages was tried to the jury, which returned a verdict against Cullen totaling $5,125,000. The Bells do not assign error to this verdict, and Cullen is not participating in this appeal.

Cullen testified at trial by deposition. She denied abusing any children while working for the childcare centers, but declined to answer any questions about Cash. Cullen testified, over the childcare centers' objection, that if she had been accused of, investigated for, or charged with child abuse, she would have stopped working as a childcare provider before being hired by Christopher and Ashley. Cullen also testified, over objection, that if she had been listed on the child abuse central registry,[3] she would not have placed her profile on Care.com.

#### (b) Claim Against Care.com

The Bells sued Care.com for negligent misrepresentations regarding Cullen's background. Prior to trial, Care.com was dismissed on summary judgment. No party has assigned error to that ruling, and Care.com is not participating in this appeal.

---

[3] See Neb. Rev. Stat. §§ 28-718 and 28-720 (Cum. Supp. 2012).

- 141 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

### (c) Claims Against
### Childcare Centers

The Bells alleged negligence claims against La Petite Academy, Inc., and its director, Lisa Hampson (collectively La Petite), and Grow With Me Childcare & Preschool LLC and its director, Jennifer Schmaderer (collectively Grow With Me). The evidence offered at trial against La Petite and Grow With Me is summarized below.

The Bells alleged the childcare centers were negligent because they knew or should have known that Cullen was abusing children while in their employ and failed to report that abuse to authorities. The Bells' general theory of liability was that the childcare centers had a common-law duty of reasonable care and breached that duty by failing to report Cullen's abusive behavior. The alleged breach was premised in part on Neb. Rev. Stat. § 28-711(1) (Reissue 2016), which provides:

> When any physician, any medical institution, any nurse, any school employee, any social worker, . . . or any other person has reasonable cause to believe that a child has been subjected to child abuse or neglect or observes such child being subjected to conditions or circumstances which reasonably would result in child abuse or neglect, he or she shall report such incident or cause a report of child abuse or neglect to be made to the proper law enforcement agency or to the [Department of Health and Human Services] on the toll-free number established by subsection (2) of this section.

In Nebraska, the willful failure to report child abuse or neglect is a Class III misdemeanor.[4]

Nebraska maintains a central registry of child protection cases.[5] This registry contains "records of all reports of child abuse or neglect opened for investigation" that are

---

[4] See Neb. Rev. Stat. § 28-717 (Reissue 2016).

[5] See §§ 28-718 and 28-720.

- 142 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

ultimately classified as either "court substantiated or agency substantiated."[6] "Court substantiated" means a court of competent jurisdiction has entered a judgment of guilty against the subject of the report or there has been an adjudication of abuse or neglect in juvenile court.[7] "Agency substantiated" means the Department of Health and Human Services investigated and determined the report "was supported by a preponderance of the evidence."[8] Nebraska administrative regulations provide that an individual listed as a perpetrator on the registry may not be on the premises of a childcare center during the hours of operation.[9] Administrative regulations also permanently bar an individual from working in a childcare center if he or she has been convicted of an unlawful act that endangers the health or safety of another individual, including child abuse, child neglect, and assault.[10]

### (i) Evidence Against La Petite

La Petite is a national company that operates a childcare center in Omaha, Nebraska. The Bells had no relationship with La Petite, but Cullen was employed at La Petite from December 2006 to December 2007.

At trial, the Bells presented evidence that while Cullen was employed by La Petite, a coworker saw Cullen yell at, shove, and drop toddlers in her care. Cullen was also seen forcefully pulling a child down a playground slide, causing the child's head to hit the ground. A coworker reported these events to La Petite's director, who investigated and concluded they did not amount to reportable child abuse.[11] Neither the director, the coworker, nor anyone else at La Petite reported Cullen's

---

[6] § 28-718.

[7] § 28-720(1).

[8] § 28-720(3).

[9] 391 Neb. Admin. Code, ch. 3, § 006.03B (operative May 20, 2013).

[10] *Id.*, § 006.03A1.

[11] See § 28-711.

- 143 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

behavior to the authorities. Cullen was fired from La Petite in December 2007.

### (ii) Evidence Against
### Grow With Me

Grow With Me is also an Omaha childcare center. The Bells had no relationship with Grow With Me, but Cullen was employed there from March to September 2012.

At trial, the Bells presented evidence that while Cullen was employed by Grow With Me, a coworker saw her verbally and physically abuse children. Cullen was seen dragging children, yelling at children, and dropping children. On one occasion, a coworker saw Cullen "shove" shoes and pants into a child's mouth during a diaper change. On another occasion, a coworker saw Cullen "fling" a child across the room, causing the child to hit her head on a table. These events were reported to the Grow With Me director, who investigated and concluded they did not amount to reportable child abuse.[12] Neither the director, Cullen's coworkers, nor anyone else at Grow With Me reported Cullen's behavior to the authorities. Cullen was fired from Grow With Me in September 2012.

### 2. Cullen Is Placed on
### Central Registry

At trial, the Bells presented evidence that after Cash's death, Cullen was investigated by the Department of Health and Human Services and the Omaha Police Department. As part of that investigation, Cullen's former coworkers at Grow With Me were interviewed. Based on the former coworkers' reports of Cullen's actions while employed at Grow with Me, the Department of Health and Human Services concluded the allegations of abuse were "[a]gency substantiated" and placed Cullen on the central child abuse registry.[13] An Omaha police officer testified at trial, over the childcare centers' objection,

---

[12] See *id*.

[13] See § 28-720(3).

- 144 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

that she would have arrested Cullen for child abuse based on the reports of what had occurred at Grow With Me.

The Bells claim that if Cullen's abusive behavior had been timely reported by the childcare centers, then authorities would have investigated the reports sooner, and either (1) the investigation would have prompted Cullen to voluntarily stop working in the childcare field before she applied for the position with Christopher and Ashley or (2) the investigation would have resulted in Cullen's name being placed on the central registry sooner, because the abuse would have been agency substantiated or, alternatively, because Cullen would have been charged and convicted of child abuse. The Bells contend that under any of these causal chains, but for the childcare center's negligence, Christopher and Ashley would not have hired Cullen and she would not have been in a position to inflict fatal injuries on Cash.

### 3. Childcare Centers Seek Dismissal/Directed Verdict

Before trial, the childcare centers filed motions to dismiss claiming they had no legal duty to protect Cash from the criminal acts of Cullen. The trial court denied these motions, reasoning the childcare centers owed a duty to Cash because their "alleged conduct of not reporting suspected child abuse created a risk of physical harm" to Cash. In making this legal determination, the trial court appears to have relied on *A.W. v. Lancaster Cty. Sch. Dist. 0001*[14] and § 7 of the Restatement (Third) of Torts,[15] both of which we discuss below.

At the close of the Bells' case in chief, the childcare centers moved for a directed verdict on several grounds. First, the childcare centers argued they owed no legal duty to protect Cash from Cullen's criminal acts. Next, the childcare centers

---

[14] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[15] Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010).

- 145 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

argued that if they owed a duty, it was not breached, because Cullen's actions were not reasonably foreseeable. And finally, the childcare centers argued that even assuming they were negligent in not reporting Cullen's behavior while in their employ, no reasonable fact finder could conclude that the fatal injuries inflicted on Cash were proximately caused by the childcare centers' negligence.

The district court sustained the motion for directed verdict and dismissed the Bells' amended complaint against the childcare centers. In explaining its reasoning, the district court commented that if the childcare centers had a duty it was "slim" but the court's primary reason for directing a verdict was proximate cause. The court reasoned that all of the Bells' causal chains relied on facts that were too tenuous and speculative to be accepted by any reasonable jury, and the court found no reasonable jury could conclude the childcare centers' conduct was a proximate cause of Cash's death.

After the jury returned its verdict against Cullen, the Bells filed this timely appeal, and the childcare centers cross-appealed. We granted the parties' joint motion to bypass, and moved this appeal to our docket.

## II. ASSIGNMENTS OF ERROR

The Bells assign, restated and consolidated, that the district court erred in (1) granting the childcare centers' motions for directed verdict and (2) excluding certain evidence at trial.

On cross-appeal, Grow With Me assigns, restated and consolidated, that the district court erred in (1) finding Grow with Me owed a legal duty to either Cash or the Bells and (2) finding it breached any duty. La Petite assigns, restated and consolidated, that the district court erred in (1) finding La Petite owed a legal duty to either Cash or the Bells and (2) admitting certain evidence.

## III. STANDARD OF REVIEW

[1] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw

- 146 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[16]

[2,3] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[17] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[18]

## IV. ANALYSIS

When confronted with an unimaginable loss like the one experienced by the Bells, it is natural to ask, What more could have been done? But tort law requires that a different question be answered first, Was there a legal duty to do something more?

[4,5] In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.[19] The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff.[20]

Throughout the pendency of this case, the childcare centers have argued they cannot be liable in tort for Cash's death, because they had no legal duty to protect him from Cullen. The childcare centers unsuccessfully sought a no-duty determination before trial and again during trial. On cross-appeal, the childcare centers argue it was error for the trial court to find they owed a duty on the facts of this case.

---

[16] *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

[17] *McReynolds v. RIU Resorts & Hotels*, 293 Neb. 345, 880 N.W.2d 43 (2016). See, also, *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013); *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[18] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017); *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

[19] *McReynolds v. RIU Resorts & Hotels, supra* note 17.

[20] *Id.*; *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010).

- 147 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

Before directly addressing the parties' arguments on the threshold question of duty, we review the general duty framework set out in § 7 of the Restatement (Third) of Torts, which this court adopted in *A.W. v. Lancaster Cty. Sch. Dist. 0001*.[21]

## 1. Duty Analysis Under Restatement (Third) of Torts

### (a) § 7: Duty of Reasonable Care When Actor's Conduct Creates Risk of Physical Harm

The cornerstone of the duty analysis under the Restatement (Third) is set out in § 7(a): "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Section 7(b) recognizes that even when an actor's conduct creates a risk of harm, there can be "exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases [and] a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification."

Since adopting the duty analysis of § 7 in 2010,[22] this court has applied both the general duty rule articulated in § 7(a)[23] and the policy-based exception to that rule articulated in § 7(b).[24] But the instant case presents a question we have not fully explored under the risk architecture of the Restatement (Third): When does an actor's conduct create a risk of physical harm sufficient to trigger the ordinary duty of reasonable care under § 7?

[6] This question is central to the duty framework of the Restatement (Third), because the ordinary duty of reasonable

---

[21] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14.

[22] See *id*.

[23] See, e.g., *Olson v. Wrenshall*, 284 Neb. 445, 822 N.W.2d 336 (2012); *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011).

[24] See, e.g., *McReynolds v. RIU Resorts & Hotels, supra* note 17; *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

- 148 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

care under § 7 is expressly conditioned on the actor's having engaged in conduct that creates a risk of physical harm to another.[25] And, as the comments to § 7 recognize, "[i]n the absence of conduct creating a risk of harm to others, an actor ordinarily has no duty of care to another."[26]

Although "conduct creating a risk of harm" is the touchstone of duty under § 7, that section does relatively little to develop the concept. Comments to § 7 explain that "[a]n actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct."[27] Additional guidance is found in the comments to the Restatement (Third) of Torts, § 6, which explain:

> The conduct that creates the risk must be some affirmative act, even though the negligence might be characterized as a failure to act. For example, an automobile driver creates risks to others merely by driving, although the negligence may be failing to employ the brakes at an appropriate time or failing to keep a proper lookout. By contrast, when the only role of an actor is failing to rescue or otherwise intervene to protect another from risks created by third persons or other events, courts need to give explicit consideration to the question of duty.[28]

Section 37 of the Restatement (Third) of Torts,[29] discussed below, also addresses the foundational concept that the duty of reasonable care is limited to risks created by the actor's affirmative conduct.

---

[25] Restatement (Third) of Torts, *supra* note 15, § 7, comment *l*.

[26] *Id*. at 83.

[27] *Id*., comment *o*. at 84.

[28] *Id*., § 6, comment *f*. at 69.

[29] Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 37 (2012).

- 149 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

### (b) § 37: No Duty of Care Regarding
### Risks Not Created by
### Actor's Conduct

[7] Section 37 of the Restatement (Third) provides: "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable."[30] The Restatement (Third) explains the relationship between §§ 7 and 37 as follows:

> Section 7 of this Restatement states the general principle that an actor has a duty of reasonable care when the actor's conduct creates a risk of physical harm to others. [Section 37] states a complementary principle: there is no duty of care when another is at risk for reasons other than the conduct of the actor, even though the actor may be in a position to help. As with any no-duty rule, this one pretermits consideration of an actor's negligence. In the absence of a duty, the actor cannot be held liable.[31]

[8-10] The rationale for the no-duty rule under § 37 is premised, in part, on a distinction long recognized in the common law of torts between affirmatively creating a risk of harm and merely failing to prevent it.[32] As the Reporter for the first Restatement of Torts explained:

> "There is no distinction more deeply rooted in the common law and more fundamental than that between misfeasance and non-feasance, between active misconduct working positive injury to others and passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant . . . ."[33]

---

[30] *Id.* at 2.

[31] *Id.*, comment *b.* at 3.

[32] *Id.*, Reporters' Note, comment *a.*

[33] *Id.* at 8, quoting Francis H. Bohlen, *The Moral Duty to Aid Others as a Basis of Tort Liability*, 56 U. Pa. L. Rev. 217 (1908).

In theory, the difference between actively creating risk and failing to prevent it is fairly clear,[34] but in practice, it can be difficult to discern.[35] Comments to § 37 suggest that one way to determine whether an actor's conduct created a risk of harm is to "explore, hypothetically, whether the same risk of harm would have existed even if the actor had not engaged in the conduct."[36] Similarly, comments in § 7 suggest that to determine whether an actor's conduct has created the risk, it is useful to "consider whether, if the actor had never existed, the harm would not have occurred."[37]

But under § 37, even a determination that a defendant's conduct did not create a risk of physical harm to the plaintiff does not necessarily end the duty inquiry. This is because § 37 recognizes an exception to the no-duty rule when a court has determined that another recognized affirmative duty is applicable.[38] Generally speaking, these affirmative duties arise from special relationships that courts have determined justify the imposition of an affirmative duty to act.[39]

The Restatement (Third) identifies several such special relationships[40] and cautions the list is not exclusive; courts may decide to recognize other areas for affirmative duties under § 37, just as they may decide—for reasons of policy or principle—to recognize additional no-duty rules under § 7.[41] Among others, the Restatement (Third) recognizes an affirmative duty when the actor has a special relationship with the

---

[34] W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56 (5th ed. 1984).

[35] See Restatement (Third) of Torts, *supra* note 29, § 37, comment *c.*

[36] *Id.* at 4.

[37] Restatement (Third) of Torts, *supra* note 15, § 7, Reporters' Note, comment *l.* at 103.

[38] See Restatement (Third) of Torts, *supra* note 29.

[39] See, e.g., Keeton et al., *supra* note 34.

[40] Restatement (Third) of Torts, *supra* note 29, §§ 40 to 42.

[41] *Id.*, § 37, comment *b.*

- 151 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

plaintiff[42] or when the actor has a special relationship with a person who poses a risk to the plaintiff.[43] The term "'special relationship' has no independent significance," but "merely signifies that courts recognize an affirmative duty arising out of the relationship where otherwise no duty would exist pursuant to § 37."[44]

Since 2010, this court has cited approvingly to § 37 in several cases.[45] Likewise, we have relied on the framework of that section in recognizing the principle that even when an actor's conduct does not create a risk of physical harm, the actor may still owe an affirmative duty of care based on a special relationship.[46] For instance, we have recognized and adopted several of the special relationship provisions found in the Restatement (Third), including the special relationship between a school and its students,[47] the special relationship between an employer and its employees,[48] the special relationship between a landlord and its tenants,[49] and the special relationship between a custodian and those in its custody.[50] All of these special relationships have in common the characteristic that the actor is in a position to exercise some degree of control over the other person.[51]

---

[42] *Id.*, § 40.

[43] *Id.*, § 41.

[44] *Id.*, § 40, comment *h.* at 42.

[45] See, *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 899 N.W.2d 227 (2017); *Olson v. Wrenshall*, 284 Neb. 445, 822 N.W.2d 336 (2012); *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012).

[46] See *Rodriguez v. Catholic Health Initiatives, supra* note 45.

[47] See, *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017); *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14.

[48] *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012).

[49] *Peterson v. Kings Gate Partners*, 290 Neb. 658, 861 N.W.2d 444 (2015).

[50] *Rodriguez v. Catholic Health Initiatives, supra* note 45; *Ginapp v. City of Bellevue, supra* note 45.

[51] See Restatement (Third) of Torts, *supra* note 29, § 41, comment *c.*

- 152 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

For the sake of completeness, we observe that before adopting the duty analysis under the Restatement (Third),[52] we generally relied on § 315 of the Restatement (Second) of Torts[53] to analyze whether a defendant had an affirmative duty to control the conduct of a third person to prevent them from causing physical harm to others.[54] Section 315 also focused the duty inquiry on whether a special relationship existed, providing:

> There is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.[55]

The Restatement (Third) instructs that § 37 is intended to replace Restatement (Second) § 315.[56] To the extent § 37 provides the framework for those special relationship rules this court has previously recognized in §§ 40 and 41 of the Restatement (Third), we find § 37 is consistent with Nebraska's jurisprudence and, to that extent only, adopt its rationale.

Mindful of the duty framework of the Restatement (Third) §§ 7 and 37, we now consider the threshold legal question presented here: Did the childcare centers owe a legal duty to protect Cash from the risk of physical harm by Cullen?

## 2. DUTY ANALYSIS UNDER RESTATEMENT (THIRD)

The district court found the childcare centers owed a duty of reasonable care to Cash under the general duty rule of the

---

[52] See *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14.

[53] Restatement (Second) of Torts § 315(a) (1965).

[54] See *Ginapp v. City of Bellevue, supra* note 45.

[55] Restatement (Second) of Torts, *supra* note 53, § 315 at 122.

[56] See Restatement (Third) of Torts, *supra* note 29, comment *a*.

Restatement (Third) § 7, reasoning that their failure to report Cullen's suspected child abuse created a risk of physical harm to Cash. In the childcare centers' cross-appeal, they assign this as error.

The childcare centers argue, summarized, that (1) they did not owe a legal duty to Cash under § 7 of the Restatement (Third) and (2) they had no special relationship with either Cash or Cullen that would support recognition of an affirmative duty under any other section of the Restatement (Third). The childcare centers also argue that Nebraska's reporting statutes[57] do not create a private right of action or establish a duty in tort.

[11] In responding to the cross-appeal, the Bells expressly reject any suggestion that they are claiming Nebraska's reporting statutes create a tort duty or give rise to a private right of action, and they do not claim the failure to report suspected abuse amounts to negligence per se. Instead, the Bells argue—as they have throughout the pendency of this case—that the childcare centers owe everyone, including Cash, a general duty of reasonable care under § 7 of the Restatement (Third). In other words, the Bells do not characterize the childcare centers' failure to report Cullen's abuse as the source of any legal duty, but instead suggest it is evidence the childcare centers breached their general duty of reasonable care. Given the Bells' position, it is not necessary, in this case, to consider whether Nebraska's reporting statutes create a private right of action or an affirmative duty in tort to act in protection of another, because that question is not presented. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[58]

It is necessary, however, to address the Bells' suggestion that § 7 of the Restatement (Third), and our adoption of that

---

[57] §§ 28-718 and 28-720.

[58] *State v. Jedlicka,* 297 Neb. 276, 900 N.W.2d 454 (2017); *State v. Botts*, 25 Neb. App. 372, 905 N.W.2d 704 (2017).

- 154 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

section in *A.W. v. Lancaster Cty. Sch. Dist. 0001*,[59] effectively recognized a general duty of reasonable care to all others at all times. This interpretation of § 7 was advanced at oral argument before this court, and it is incorrect.

[12] As explained earlier, § 7 of the Restatement (Third) does not recognize a universal duty to exercise reasonable care to all others in all circumstances. Rather, it imposes a general duty of reasonable care only on an actor whose conduct has created a risk of physical harm to another, and it recognizes that absent such conduct, an actor ordinarily has no duty of care to another.[60] The expansion of § 7 urged by the Bells is not supported by the Restatement (Third) and is inconsistent with our prior decisions applying that section.

[13] Instead, we apply the framework of the Restatement (Third) to determine whether the childcare centers owed a legal duty to Cash or the Bells. Under that framework, the first step is to determine whether the actor's affirmative conduct created a risk of physical harm such that the general duty to exercise reasonable care under § 7 is applicable. If no such affirmative conduct exists, then the next step is to determine whether any special relationship exists that would impose a recognized affirmative duty on the actor with regard to the risks arising within the scope of that relationship.

### (a) Conduct of Childcare Centers Did Not Create Risk of Harm

In addressing the threshold question of legal duty, the trial court found the childcare centers' "conduct of not reporting suspected child abuse created a risk of physical harm to Cash." This finding was erroneous for several reasons.

First, by finding the failure to report suspected abuse gave rise to a legal duty of reasonable care, the trial court conflated the separate concepts of legal duty and breach of that duty. The failure to report suspected abuse might present a question of

---

[59] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14.

[60] See Restatement (Third) of Torts, *supra* note 15, § 7, comment *l*.

- 155 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

breach, but it does not speak to the existence of a legal duty. Here, the trial court effectively found that the same failure to act both created the legal duty and breached it.

[14-17] The failure to rescue or protect another from harm is not conduct creating a risk of harm under § 7 and does not give rise to a duty of care under that section. Under the duty analysis of the Restatement (Third), the conduct creating the risk must be some affirmative act, even though the claimed breach can be a failure to act.[61] When the only role of the actor is failing to intervene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk.[62] Generally speaking, the law does not recognize a duty of care when others are at risk of physical harm for reasons other than the conduct of the actor, even if the actor may be in a position to help.[63] Ordinarily, the failure to act will not be the sort of affirmative conduct that gives rise to a duty under § 7.

However, at oral argument before this court, the Bells characterized the childcare centers' actions not as the failure to report, but, rather, as the affirmative conduct of hiding Cullen's abuse from authorities. This argument illustrates the sometimes fragile distinction between nonfeasance and misfeasance in tort jurisprudence. But even if the childcare centers' conduct can be characterized as affirmative, it is insufficient to create a legal duty under § 7 of the Restatement (Third), because the conduct did not create a risk of physical harm.

There is little doubt that Cullen herself posed a risk of harm to children in her care. And while the childcare centers presented evidence that they investigated Cullen's behavior and concluded it did not amount to reportable child abuse, it is frankly appalling to think that a childcare center would conceal any mistreatment of children in its care. But even if Cullen's

---

[61] *Id.*, § 6, comment *f.*

[62] See *id.*

[63] Restatement (Third) of Torts, *supra* note 29, comment *b.*

- 156 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

behavior had been reported and an investigation ultimately confirmed abuse, the risk of harm posed by Cullen would remain the same. Under § 7, "[a]n actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct."[64] And whatever the childcare centers' reasons may have been for not reporting Cullen's behavior, their failure to do so did not create or increase the risk Cullen posed, rather it allowed the risk to continue unabated.

As such, whether framed as the failure to report suspected abuse or as the affirmative act of concealing suspected abuse, the childcare centers' conduct did not create or increase the risk of physical harm to Cash or the Bells and was insufficient to create a duty under § 7. The trial court erred in finding otherwise.

### (b) No Special Relationship or Other Affirmative Duty

[18] Even when an actor's conduct does not create a risk of physical harm, the actor may still owe an affirmative duty of care based on a special relationship.[65] The Bells argue that a special relationship between the childcare centers and Cullen created a duty to protect third parties such as Cash and the Bells from the risk of harm posed by Cullen. Specifically, the Bells contend the special relationship of employer and employee created a legal duty under § 41(b)(3) of the Restatement (Third).

[19] Section 41 of the Restatement (Third) provides that "[a]n actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship."[66] Among the relationships identified in § 41 is that of "an employer with employees when the employment facilitates

---

[64] Restatement (Third) of Torts, *supra* note 15, § 7, comment *o*. at 84.

[65] See *Rodriguez v. Catholic Health Initiatives, supra* note 45.

[66] Restatement (Third) of Torts, *supra* note 29, § 41(a) at 64-65.

the employee's causing harm to third parties."[67] We have not expressly adopted the special relationship set out in § 41(b)(3), and do not do so here, because the present facts do not support the existence of a special relationship under that section.

Comments explaining the duty of reasonable care under § 41 of the Restatement (Third) observe that all of the special relationships identified in that section are ones in which the actor has some degree of control over the other person.[68] The Bells acknowledge that the employer/employee relationship between Cullen and the childcare centers terminated before Cash was born, and they do not suggest the childcare centers had any control over Cullen after she left their employ. But the Bells argue that § 41 still gives rise to a duty in this case, because "Cullen's employment with [the childcare centers] facilitated her ability to cause harm to third parties."[69] Specifically, the Bells argue that "[a]bsent Cullen's untarnished records at the [childcare centers], Cullen would not have become [Cash's] nanny and, further, would not have abused and, ultimately, killed Cash . . . ."[70]

This argument misconstrues the provisions of § 41. As the comments to that section make clear, an employer facilitates the employee causing harm to third-parties only when the employment "provides the employee access to physical locations, such as the place of employment, or to instrumentalities, such as a concealed weapon that a police officer is required to carry while off duty, or other means by which to cause harm that would otherwise not be available to the employee."[71]

If Cullen had been employed by the childcare centers when she fatally injured Cash, our analysis under § 41 would be

---

[67] *Id.*, § 41(b)(3) at 65.

[68] See *id.*, comment *c.*

[69] Reply brief on cross-appeal for appellants at 16.

[70] *Id.*

[71] Restatement (Third) of Torts, *supra* note 29, § 41, comment *e*. at 67.

- 158 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

very different. But the risk that Cullen posed to Cash and the Bells did not arise within the scope of her prior employment with either of the childcare centers, and nothing about Cullen's prior employment provided Cullen with the means, location, or instruments used to inflict harm on Cash. The fact that Cullen highlighted her prior employment when seeking the nanny position with Christopher and Ashley cannot fairly be characterized as the childcare centers' facilitating Cullen's criminal acts.

We find, as a matter of law, that there was no special relationship under § 41(b)(3) between the childcare centers and Cullen that could give rise to an affirmative duty to prevent Cullen from causing physical harm to Cash after she left their employ.

We emphasize the narrow nature of our holding in this case. This opinion does not disturb the jury's verdict against Cullen finding her liable in tort for Cash's death and awarding damages to the estate and the Bells. Nor does this opinion impact the duty of a childcare provider to protect children in its care from the risk of physical or emotional abuse, or immunize childcare providers from the criminal consequences of failing to notify authorities of child abuse or neglect under the reporting statutes.[72]

But on the facts of this case, we cannot find that either § 7 or § 41(b)(3) of the Restatement (Third) supports the existence of a legal duty owed by the childcare centers to Cash or the Bells. Indeed, if we were to recognize a legal duty to protect others from harm based exclusively on the failure to report suspected abuse, such a duty could expose every citizen in Nebraska who witnesses possible abuse or neglect and fails to report it, to potentially limitless civil tort liability for the future criminal acts of abusers over whom they have no control, and with whom they have no special relationship.

Therefore, although our reasoning differs from that articulated by the trial court, we affirm the decision to direct a

---

[72] §§ 28-718 and 28-720.

- 159 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BELL v. GROW WITH ME CHILDCARE & PRESCHOOL
Cite as 299 Neb. 136

verdict in favor of the childcare centers, because, as a matter of law, the childcare centers owed no legal duty to Cash or the Bells. Because we have resolved this appeal on the threshold issue of duty, it is unnecessary to address any of the remaining assignments of error.[73]

## V. CONCLUSION

Given the magnitude of the loss suffered by the Bells, we realize the result of this appeal may appear harsh, but the law does not permit recovery on these facts. As a matter of law, the childcare centers cannot be liable in tort for Cash's death, because their conduct did not create a risk of physical harm to Cash and because they did not have a special relationship with either Cash, the Bells, or Cullen that would give rise to an affirmative duty to protect Cash from the risks posed by Cullen. Because there can be no liability in tort in the absence of a legal duty, we must affirm the trial court's decision to direct a verdict in favor of the childcare centers.

Affirmed.

Wright, J., not participating in the decision.

---

[73] See *Papillion Rural Fire Prot. Dist. v. City of Bellevue*, 274 Neb. 214, 739 N.W.2d 162 (2007).