IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SANWICK V. DEAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TAWNIA SANWICK, APPELLEE,

V.

QUENTIN C. DEAN, APPELLANT.

Filed April 3, 2018.    No. A-17-790.

Appeal from the District Court for Douglas County: DARRYL R. LOWE, County Judge. Reversed and remanded with directions.

Joseph L. Howard, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

No appearance for appellees.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Quentin C. Dean appeals the entry of a harassment protection order by the district court for Douglas County in favor of Tawnia Sanwick. Because we find that the properly admitted evidence was insufficient to support entry of the harassment protection order, we reverse and remand with directions to vacate.

### BACKGROUND

On May 31, 2017, Todd Sanwick filed a petition and affidavit to obtain a harassment protection order in the district court against Dean. Todd listed his wife and children, including daughter Tawnia, as additional petitioners, but the affidavit was signed only by Todd. In the affidavit, Todd set forth four allegations of the most recent acts of harassment by Dean toward him

- 1 -

and his family or household members. First, he stated that on May 25, Dean "showed up to our house to talk to my wife, she didn't answer the door. [H]e then called her and said he wanted to talk to her, she said not now, he then wanted to talk to Tawnia[,] my wife said no." Second, Todd stated that from May 27 to 28, Dean "Tried to contact Tawnia on [F]acebook she didn't respond but he kept trying finally sent his phone number to her at 4:26 AM." Third, Todd stated that on May 30, "A single rose was delivered to our house. Note: read happy Birthday Tawni[a] with no signature, we contacted florist and they said it was from [Dean]. We contacted the police." Finally, Todd alleged that on May 30, one of his sons:

> contacted some of his fr[ie]nds that are also Quentin's fr[ie]nds they told him we should be very worried Quentin is acting like he did 3 years ago and he believes he is being followed by cameras for a TV show he is in. They told [the son] we should watch Tawni[a] closely and make her aware that he is doing the same thing he did last time.

On May 31, 2017, the district court entered an ex parte harassment protection order against Dean.

A show cause evidentiary hearing was held on July 13, 2017. At the start of the hearing, the district court granted a motion by Todd's counsel to withdraw from the case at Todd's request, and Todd proceeded pro se. Dean appeared with counsel.

After swearing in both Todd and Dean, the district court questioned Todd. In response to the court's questioning, Todd testified that the statements in his petition were "true and honest to the best of [his] ability" and that the family member being targeted by Dean was Tawnia. Todd stated that Tawnia had just turned 21, that she attended college in Lincoln, but that she resided with him over the summer. Todd also informed the court that he had "additional evidence" he wanted to produce.

Before allowing Todd to present the rest of his evidence, the district court gave Dean's attorney the opportunity to cross-examine Todd. Upon cross-examination, Todd testified that he had not seen Dean at his house, but that he knew Dean had been there because of "something" his wife told him. Todd's wife was not present at the hearing. Todd testified further that his wife told him Dean initially wanted to talk to her and then wanted to talk to Tawnia.

Dean's attorney proceeded to cross-examine Todd about the remaining allegations of harassment in his petition and affidavit. With respect to the second incident, Todd testified that Dean attempted to contact his daughter on Facebook. When asked if he had seen the Facebook posts, Todd responded that he had "proof of that." When asked if Dean threatened Todd's daughter or said "anything inappropriate" in the posts, Todd testified, "I can't answer that. I don't know his state of mind." When questioned further about the nature of the posts, he stated, "Again because of what happened prior three years ago, yes, I would believe." Todd acknowledged that his daughter was not present to testify.

When cross-examined about the single rose which was delivered to his house, Todd testified that he saw the rose. He testified that "we were all together in the kitchen" when his daughter contacted the florist, after having first verified that the rose had not been sent by her boyfriend. Todd stated that his daughter told him that the florist told her the rose was from Dean.

With respect to the final incident, Todd testified that his son was contacted by some friends who said they were worried about Dean. Todd verified that the son's friends were not in court to testify, but he stated that he had copies of additional documents he had received the night before to prove the statements in his petition and affidavit.

Todd submitted exhibit 1, consisting of copies of a statement he indicated was written by his daughter with a superimposed image of a sequence of "Messenger" inquiries, plus two photographs "pulled off of Instagram right after this [ex parte] protection order was served." Todd also submitted exhibit 2, which he informed the court was an email received from a friend of Todd's son who had asked not to be identified. Dean's attorney noted that he had not seen the exhibits previously and objected on the bases of lack of proper authentication, foundation, and hearsay. Although not abundantly clear from the record, the district court appears to have sustained the objection to exhibit 2, at least on the basis of hearsay, and excluded it from evidence at the July 13, 2017, hearing. The court admitted exhibit 1 into evidence.

After Dean's attorney objected further, stating that Todd was unable to authenticate his daughter's statement, the district court responded:

> I'm going to allow it. We have relaxed rules in regards to these protection hearings. We don't have the same standard when you have pro se petitioners and pro se defendants as we do when you have lawyers. So, the standards, as far as the rules of evidence, they're relaxed. So, his daughter's statement, so that she does not have to be here to confront and face this individual who, on his face, seems like that's all he wants is to see her, I don't necessarily want her present.

At that point in the hearing, the district court and Dean's attorney discussed the possibility of a continuance, which was granted by the court. During the course of this discussion, the court indicated it was willing to grant a continuance, "particularly in light of the petition that came out three years ago." Before the hearing concluded, the court asked, "And, for the record, three years ago this was heard by [another judge] and it was granted, right?" Todd answered affirmatively and told the court, "And it was released because he stopped and he stayed away from us, and then it all started again."

At the July 27, 2017, continued hearing, Todd again appeared pro se, and Dean was still represented by counsel. Todd did not offer any further evidence, and none of the other named petitioners appeared.

Dean's attorney renewed his foundation and hearsay objections to the exhibits previously offered. He also indicated that he objected on the bases of hearsay and foundation to the allegations in the petition and the affidavit. In response, the district court stated:

> And I'll note the rules are relaxed, particularly when we have petitioners who are not well-versed in the law seeking protection orders. And I have received these exhibits, at least Exhibits 1 and 2, and that will remain my ruling. And they will be admitted, and used, and relied upon by the Court in making its determination.

After further discussion with Dean's attorney about procedure and the applicability of the Nebraska Rules of Evidence, the court again stated that it was receiving exhibits 1 and 2.

Dean's attorney then argued that Todd had not presented sufficient properly admitted evidence to justify continuance of the harassment protection order for one year. He also renewed his hearsay and foundation objections. In response, the district court stated, "That's fine. You can also object to me taking judicial notice of CI 14-2744, which I relied upon and read as well, and will use it as evidence, noting that I am going to grant this harassment protection order." The court then limited its grant of the protection order against Dean in favor of Tawnia only.

On July 27, 2017, the district court entered an order continuing the harassment protection order against Dean, in favor of Tawnia only, for 1 year from the original date of May 31.

## ASSIGNMENTS OF ERROR

Dean asserts, restated, that the district court erred by (1) admitting and relying on inadmissible evidence and (2) finding sufficient evidence to support the issuance of a harassment protection order in favor of Tawnia against Dean.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A protection order is analogous to an injunction. *Id.* Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

## ANALYSIS

*Preliminary Matters.*

Before addressing Dean's assigned errors, we first address two preliminary matters presented by the conduct of the protection order hearing and the appellate record in this case.

First, the district court made several statements about pro se litigants and the applicability of the rules of evidence in the context of show cause hearings in harassment protection order proceedings. In light of those statements, we observe that a pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). And, while "procedures at a show cause hearing might be less elaborate than those commonly used at civil trials," the rules of evidence are still applicable. *Richards v. McClure*, 290 Neb. at 132, 858 N.W.2d at 848. The Nebraska Supreme Court has held that "at a minimum, testimony must be under oath and documents must be admitted into evidence before being considered." *Mahmood v. Mahmud*, 279 Neb. 390, 398, 778 N.W.2d 426, 433 (2010). See, also, Neb. Rev. Stat. § 27-1101 (Reissue 2016) (evidence rules apply in district courts generally to all civil and criminal proceedings, including contempt proceedings except those in which judge may act summarily). Thus, we will apply the rules of evidence when addressing Dean's first assignment of error concerning the admissibility of exhibits 1 and 2.

Second, although the district court apparently took judicial notice of, and relied on, prior protection order proceedings between the parties in issuing the protection order in this case, this was not done in such a way as to allow for meaningful appellate review of what was judicially noticed. Papers requested to be judicially noticed must be marked, identified, and made a part of the record. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017). Testimony must be transcribed, properly certified, marked, and made a part of the record. *Id.* The trial court's ruling should state and describe what it is the court is judicially noticing. *Id.* Otherwise, a meaningful review of its decision is impossible. *Id.* In this case, there were several oblique references to protection order proceedings three years prior, but no one asked for the court to take judicial notice of those proceedings and no documents related to those proceedings were marked and included in the record. Further, given the vague nature of the discussion about the issue in the transcribed proceedings from the present case, it is impossible for this court to tell exactly what happened previously. Even if we were able to discern from the discussion what happened previously, there was no sworn testimony presented on this issue, and an attorney's assertions at trial are not to be treated as evidence. *In re Interest of Lawrence H.*, 16 Neb. App. 246, 743 N.W.2d 91 (2007).

Tangentially, we note that although Todd testified that the allegations of the petition and affidavit were true, they were not admitted into evidence. The contested factual hearing in protection order proceedings is a show cause hearing, in which the fact issues before the court are whether the facts stated in the sworn application are true. *Mahmood v. Mahmud, supra*. The allegations of a petition require proof by evidence incorporated in the bill of exceptions. *Id.* A prima facie case may be established by a form petition and affidavit, but the petition and affidavit cannot be considered as evidence until offered and accepted at the trial as such. *Id.*

An ex parte order does not relieve the petitioner of the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order. *Id.* However, Todd was sworn as a witness, and upon cross-examination by Dean's attorney, he did testify about the allegations. Thus, while we do not consider the allegations as set forth in the petition, and while the judicially noticed material is not available for our review, we do consider Todd's testimony and any properly admitted exhibits in addressing Dean's second assignment of error.

*Admission of Exhibits 1 and 2.*

Dean asserts that the district court erred by admitting and relying on inadmissible evidence. He argues that the court should not have admitted exhibits 1 and 2 over his hearsay, foundation, and authentication objections. We agree that both exhibits should have been excluded on the basis of hearsay. Accordingly, we need not address Dean's other bases for objection. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Bell v. Grow With Me Childcare & Preschool*, 299 Neb. 136, 907 N.W.2d 705 (2018).

As noted above, exhibit 1 includes copies of a statement that Todd identified as being from Tawnia, superimposed with what appears to be a screen shot of a sequence of inquiries from a social media messaging application, and copies of photographs that Todd stated were taken from Instagram. The typewritten, unsigned, undated statement details certain actions by "[t]he defendant" between 2012 and 2014 and specifies the declarant's feelings about those actions. The declarant also states that "this year" the defendant attempted to contact her on Facebook, showed

up at her parents' house while she was working for them, and sent flowers to their house for her birthday. The declarant states that this more recent behavior prompted the return of "the same paralyzing fear" she felt almost three years prior. The superimposed image at the bottom of the statement shows a series on inquiries sent on "Messenger" by Dean to an unidentified recipient, in which Dean inquires if he can ask the recipient a question, asks where another individual is, and provides his phone number. The second and third pages of exhibit 1 are copies of the photographs posted on social media by someone with the screen name "quintencdean." The first photo shows a male individual holding two guns with the words "Gang Gang" superimposed on the photo. The second photo shows the foot and ankle of an individual who is wearing a device attached around the ankle. The photos are undated and, on their face, do not identify the social media site from which they were taken.

Exhibit 2 is a typewritten, unsigned, undated statement, describing various behaviors by someone named "Quincy" and his relationship with "the Sanwick family," "Todd Sanwick," and "Tawni Sanwick." There is nothing in exhibit 2 identifying the proponent of the statement and no information to show how it might have been sent or who its recipient might have been.

Both exhibits 1 and 2 should have been excluded on the basis of hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801(3) (Reissue 2016). A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). There is no hearsay exception or definitional exclusion for exhibits offered by pro se litigants. See Neb. Rev. Stat. §§ 27-803 and 27-804 (Reissue 2016). And, while we appreciate the district court's concern for avoiding having Tawnia and Dean in the courtroom at the same time, there is nothing in the record to indicate that she was unavailable as a witness. See § 27-804. Likewise, although Todd informed the court that the declarant of exhibit 2 wished to remain anonymous, there is nothing in the record to show that this individual was unavailable. The court erred in overruling Dean's hearsay objections to exhibits 1 and 2. Because these exhibits should not have been admitted into evidence, we do not consider them in addressing Dean's second assignment of error.

*Sufficiency of Evidence.*

Dean asserts that the district court erred in finding sufficient evidence to support the issuance of a harassment protection order in favor of Tawnia against Dean. We agree.

Harassment protection orders are issued pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016), which provides in relevant part:

(1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order. . . . Upon the filing of such a petition and affidavit in support thereof, the court may issue a harassment protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

The purpose and terms of § 28-311.09 are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016), which provides in relevant part:

> (1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.
>
> (2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:
>
> (a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;
>
> (b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

With the exclusion of exhibits 1 and 2, we are left with Todd's testimony that Dean was "targeting" Todd's daughter, Tawnia. Specifically, Todd testified that Dean "showed up" at Todd's house and asked to speak first to Todd's wife and then to Tawnia, which actions were not witnessed by Todd. Todd then testified that Dean tried to contact Tawnia via Facebook. Todd initially declined to state whether there was anything threatening about the posts, but he went on and testified to his belief that the statements were threatening "because of what happened prior three years ago." Next, Todd testified that a rose was delivered to the house, which he learned came from Dean after his daughter contacted the florist. Finally, Todd testified that his son was contacted by some friends who were "worried" about Dean.

Nebraska's stalking and harassment statutes are given an objective construction, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). Under Nebraska's stalking and harassment statutes, the inquiry is whether a reasonable victim would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id.* Upon our de novo review, we find insufficient evidence to show "a knowing and willful course of conduct" directed at Tawnia with the aim of "seriously terrif[ying], threaten[ing], or intimidat[ing]" her and without a legitimate purpose.

## CONCLUSION

Because there was insufficient evidence, we reverse, and remand with directions to vacate the harassment protection order.

REVERSED AND REMANDED WITH DIRECTIONS.